RECEIVED

FEB 02 2026 mem

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN SROGA,
      **Plaintiff,**

    v.

**KENNETH J. WADAS (COUNTY JUDGE),**
John & Jane Does Prosecutors from the
**COOK COUNTY STATE'S ATTORNEY'S
OFFICE Individually, & COOK COUNTY**
      **Defendants,**

)
) No.
)
)
)
)
)
)
)
)
)
)
)

1:26-cv-01270
Judge Martha M. Pacold
Magistrate Judge M. David Weisman
RANDOM / Cat. 2

**MAGISTRATE   JUDGE**

JURY DEMANDED

# CIVIL COMPLAINT

*NOW COMES THE PLAINTIFF,* **Kevin Sroga,** who complains to this Court whereby stating as follows:

## INTRODUCTION

1.    This action is being brought pursuant to the Laws of the United States Constitution, specifically, under 42 U.S.C 1983, and the laws of the State of Illinois, to redress deprivations of the Civil Rights of plaintiff that were accomplished by acts and/or omissions that the defendants committed under color of state law.

2.    This is a civil action seeking damages against these aforementioned defendants for committing acts under color of state law, whereby depriving plaintiff of rights and immunities secured to him under the constitution and the laws of the United States.

## JURISDICTION

3.    The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. Section 1983, the Judicial Code, 28 U.S.C. & 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. Section 1367 (a).

4. Venue lies in the United States District Court, Northern District of Illinois pursuant to 28 U.S.C. section 1391, because all events or omissions giving rise to these claims occurred in this District.

## PARTIES

5. At all times herein mentioned, Plaintiff **KEVIN SROGA ("SROGA")** or ("Plaintiff") is a reasonable person who has always been a citizen of the United States residing within the City of Chicago and in jurisdiction of this Court.

6. At all times herein mentioned, Defendant Cook County Circuit Court Judge Kenneth J. Wadas **("WADAS")** was employed by Cook County as a Supervising Judge for the County of Cook who was acting under color of state law as the employee, agent, and or a representative for the Cook County Judiciary who deprived Plaintiff of rights, privileges, and immunities secured to him under the laws enacted hereunder the Constitution of the United States. This Defendant is being sued in his individual/ official/personal capacities.

7. At all times herein mentioned, Defendants Jane & John Does were employed as State's Attorney's working for the cook County State's Attorney's Office for the County of Cook who were all acting under color of state law as the employees, agents, and or the representatives for the Cook County State's Attorney's Office that deprived Plaintiff of rights, privileges and immunities secured to him under the laws enacted thereunder the Constitution of the United States. These Defendants are being sued in her individual/personal/official capacities.

8. At all times herein mentioned, the government of Cook County was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the Cook County maintained, managed, and /or operated the State's Attorney's Office overseeing and running the judiciary of Cook County under their own municipal powers.

2

9.    At all times herein mentioned, the government of Cook County was a political division

of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the

Cook County maintained, managed, and /or operated the State's Attorney's Office overseeing and running the

judiciary of Cook County under their own municipal powers.

## CASE BACKGROUND LEADING TO THIS COMPLAINT

10.    This case arises out of the questionable tactics/ egregious conduct of one Circuit Court Judge Kenneth J. Wadas who has been the subject of questionable rulings/court proceedings throughout his years on the Bench. In 2015, Plaintiff was assigned to Kenneth J. Wadas under case # 15 CR 12710 which involved two separate criminal charges erroneously placed against him.

11.    One charge was pursuant to the Auto Theft Citation codes pursuant to 625 ILCS 5/4-104 (a)(3) while the other one involved a resisting an arrest charge where it had been proclaimed that plaintiff was responsible for a police officer's injury pursuant to 720 ILCS 5/31-1 (a-7).

12.    Plaintiff denied any & all allegations throughout the course of this case and had had the Public Defender's Office represent him for approximately 4 out of the 9 years it took to bring this matter to Trial. During the first four and a half years, defendant Wadas's behavior towards plaintiff appeared somewhat normal, it was shortly after plaintiff decided to go *pro se* (which he has an absolute constitutional right to do and exercise) that defendant Wadas's attitude towards plaintiff changed.

13.    Judge Wadas DID NOT like the plaintiff representing himself before him as he took a retaliatory animus towards plaintiff for having done so.

14.    This was very much apparent when defendant Wadas prematurely denied plaintiff's written motions subjectively instead of objectively whereby often denying them the very same day they were filed before the Bench without ever fully reading them or giving them any legal forethought whatsoever.

15.    Wadas often "Helped Prosecute" the plaintiff in this matter and very much aided the state with their prosecution of Plaintiff as if he was a   member of the State's Attorney's Office instead of a member of the Cook County Judiciary.

16.    Wadas found a creative way to hold plaintiff for 13 months in the CCDOC on an alleged VOBB (Violation of Bail Bond) allegation whereby holding two separate hearings before the court (essentially taking up two separate appeals on separate grounds) whereby defendant Wadas had changed its theory on why it

3

needed to hold plaintiff in custody all while plaintiff's father had been diagnosed with cancer and had been labeled as terminally ill and only had little time remaining on this earth.

17. Yes, defendant Wadas was made well aware of plaintiff's fathers' condition and as it turned out, plaintiff father died the day he was released from custody missing his father's last breath on this earth by about 6 hours or so.

18. This Plaintiff was entitled to a fair and impartial proceedings / procedures against him and he never formally received them from the actions of defendant Wadas.

19. Under the equal Protection clause, equal protection means that a government must apply its laws fairly and cannot treat people differently without a valid reason.

20. Individuals in similar situations should be treated alike under the law.

21. The Equal Protection Clause of the Fourteenth Amendment applies to state governments & to its agents.

22. The equal protection clause is crucial to the protection of civil rights. When an individual believes that either the federal government or a state government has violated their guaranteed equal rights, that individual is able to bring a lawsuit against that governmental body for relief.

23. Moreover, Courts apply different levels of scrutiny to test whether a potentially discriminatory law is valid. These include strict scrutiny, intermediate scrutiny, and rational basis review. The level applied depends on the nature of the classification and the rights affected.

24. Here, you not only have an officer of the court but a judge nonetheless, aiding the men & women from the Cook County State's Attorney's Office to aid in prosecuting plaintiff on an egregious case of aggravated resisting charge under 720 ILCS 5/31-1 (a-7)- where "a person convicted for a violation of this Section whose violation was the proximate cause of an injury to a peace officer, firefighter, or correctional institution employee is guilty of a Class 4 felony."

25. From day one, the men & women of the State's Attorney's Office never had a case nor "*ANY*" probable cause (WHATSOEVER) to bring these two sets of charges against this plaintiff, but being in the business that they are, they maliciously prosecuted plaintiff over a 9 plus year period of time not only preventing Plaintiff from working as a professional educator (because of the nature of charges brought against him being on a Felony level) but by also forcing plaintiff to miss a vital time in his life with the last 13 months of his father's life here on earth.

26. Plaintiff wishes to spell something out for this court, he's well adverse in this legal system & games that the men & women at the Cook County State's Attorney's Office plays in conjunction to prosecuting matters need to be addressed!

27. They prosecute matters in the best interests of law enforcement officers in attempts to safeguard police wrong doings instead of what they should be doing and that's to prosecute their matters in the best interests of justice.

28. Is it a game? Plaintiff believes it is! It's not about right & wrong, it's about lawyers making a case or trying to make a case where they don't have one, making cases stick and achieving wins instead of seeking out (what they're supposed to be doing) administering justice as that's the way the system was originally designed.

29. This win at all costs attitude is, has and will bring future financial ruins to both this city and county based upon the current philosophies & conduct of these men & women from the Cook County State's Attorney's Office.

30. Finally, the latest controversy involving this Judge entails a "NOT GUILTY" verdict on Mr. Kevin Walker (a former Cook County Juvenile Detention Center Employee that left a 15 –Year-old boy unconscious and bruised.

31. Now, for those of us that know how Judge Wadas operates, it's not hard to find out way he found that Defendant "Not Guilty" in that cause, it wasn't because he wasn't Guilty, Judge Wadas found him Not Guilty because the Defendant (Kevin Walker) was a former member of the Cook County Detention Center, a form of law enforcement and a former cook county employee where Wadas's very own son works for the Cook County Sheriff's Office handling civil process matters.

32. This is what is generally referred to as nepotism and having a son working for the Cook County Sheriff's Office.

33. Judge Wadas should have recused himself from said case because he just can't be fair and impartial when it comes to cases involving law enforcement as law enforcement can do no wrong in his eyes (all one would have to do is see this Judges Chambers to know and understand that) as he has multiple pictures/ photos of former law enforcement personal (one being the photograph of late actor Dennis Farina. Does this Judge really know the late Dennis Farina? Plaintiff knows his two sons, Michael and Dennis Jr. and having grown up with them, the real Dennis Farina was a piece of work who left his wife behind to fend for herself while the former Chicago Police Officer turned Movie star abandoned them to fend for themselves as he ventured off to Hollywood to start a new life for himself). This had a profound impact on both Dennis Jr. and Michael upbringing.

34. In any evet, any case involving the questionable conduct of law enforcement officers, should not be not never have been before this Judge as his goal is to protect them at all costs. Even a blind man a could see this.

5

Case: 1:26-cv-01270 Document #: 1 Filed: 02/02/26 Page 6 of 41 PageID #:6

35. After 9 years in unlawfully prosecuting this plaintiff (without probable cause), on the day of trial, the defendants from the State's Attorney's Office decided to drop/dismiss the **625 ILCS 5/4-104 (a)(3)** charge against plaintiff, put decided to proceed full throttle on the "**RESISTING**" charge pursuant to 720 ILCS5/31-1 (a-7) against him.

36. This plaintiff wasn't alleged to have "**RESISTED an ARREST**" in connection to this cause, it was alleged that Plaintiff was found guilty for "RESISTING LAW ENFORCEMENT" in general for him refusing to step out of his vehicle when upon being "**REQUESTED**" to do so.

37. Plaintiff refers to said commands by LEO's that night as nothing more than mere "REQUESTS" while the prosecution on the other hand, labeled them as "**LAWFUL ORDERS.**"

38. Regardless, there is NO SUCH THING as "RESISTING LAW ENFORCEMENT ORDERS to step from one's own vehicle pursuant to the statute as a person does **NOT RESIST THEM** as HE or SHE "**MAY DISOBEY THEM**" (which is) found under the pertinent statute of 625 ILCS 5/11-203, which is considered nothing more than a petty offense, punishable by a mandatory $150 fine, to willfully fail or refuse to comply with any lawful order or direction of a police officer firemen..." Under 5/11-203. **Obedience** to police officers.

39. **The Resisting or Obstructing a Police Officer** statute (prior to January 1st 2023 even though the word "**ARREST**" was NOT properly inserted in the statute only meant "**RESISTING an ARREST**" or Resisting law enforcement **during an arrest situation** "**ONLY**" like fleeing, or refusing to comply with directives in not putting one's hands behind their back once announced an arrest is taking place, or an act of **physical resistance**.

40. It never had anything to do with just resisting law enforcement verbal requests/commands/orders to get out of his/her vehicle or not do something non-physical in nature such as refusing to open a locked car door or roll down a person's vehicle window.

41. Here, in this case, Plaintiff was found guilty for NOT HAVE RESISTED THE ACTUAL ARREST, but was found GUILTY FOR HAVING RESISTED LAW ENFORCEMENT IN GENERAL for "Not stepping out of his vehicle when being summoned to do so by the officers or for non-compliance in his refusal to "OPEN / UNLOCK" his vehicle door and step out of his vehicle.

42. This is / was conduct that the legislature had never intended on punishing a person for pursuant to the Resisting Statute and on January 1st 2023, the legislature inserted the word "ARREST" after the word "RESISTING" in an effort to remove any ambiguity from the statue's construction although based upon the previously statutory construction its crystal clear that the word "RESISTING" found in that statute (prior to January 1st 2023) was meant and only meant for instances where a person is "RESISTING AN ARREST" or some other act of physical resistance "ONLY" and in no-way was never formulated nor introduced to punish any

6

43.     other types of resisting law enforcement in general because technically isn't to RESISTING law enforcement orders to do something "Technically "**_OBSTRUCTING_**" them in their job performance? I mean, as stated in a previous court proceeding, plaintiff acknowledges that the State may have had a stronger case against him if they had charged him with "OBSTRUCTING" but they didn't do that, if they had done so they never would have been able to obtain any type of felony upgrades or felony charges against him/ to prosecute him on/under!

44.     The "EQUAL PROTECTION OF RIGHTS CLAUSE" pursuant to the 14th Amendment precludes members from the State's Attorney's Office from doing this, but yet they did it here whereby violating this Plaintiff's constitutional rights pursuant to said clause and violating this Plaintiff's Substantive due process rights as well as calling into question the fundamental fairness of this Plaintiff's rights afforded to him under the United States Constitution.

45.     Finally, Plaintiff is well aware of the legal Doctrines "Absolute" and or "Judicial Immunity" those Doctrines should not apply here because those doctrines were never meant to safeguard or protect intentional prosecutorial or intentional Judicial wrong doings', (as we saw with the Wisconsin Judge Hannah Dugan of being found guilty of Felony impeding a proceeding) they were meant to safeguard Discretionary Court Rulings. They were not meant to safeguard biases or personal prejudices, a dislike towards a person or a willful wanton disregard towards a person's clearly established constitutional rights afforded to them (as we have here in this case).

# STATEMENT OF FACTS

46.     As previously stated, Plaintiff states prior to him representing himself _Pro Se_ Defendant Wadas conduct behind the Bench seemed normal.

47.     It was when Plaintiff opted to go Pro Se that Defendant Wadas took a retaliatory animus towards/against him whereby subsequently holding him in custody for 13 months in an effort to prevent him from going pro se/ take a plea deal and put Plaintiff at a disadvantage in exercising his right to proceed pro se.

48.     Defendant Wadas violated this Plaintiff's fundamental fairness rights as well as his substantive due process rights be aiding the State's Attorney's Office in essentially prosecuting this matter from behind the Bench.

49.     Defendant Wadas was a Judge who was assigned to make sure that the Plaintiff's rights where upheld and adhered to as he was supposed to remain neutral and unbiased against this Plaintiff, however, that never happen.

50.     Defendant Wadas did so on multiple occasions by first, raising objections on the Record without the State's Attorney's approval or input (essentially prosecuting their case for them), secondly, by amending the charging instrument information (himself) instead of having had State's Attorney's to do it, third, by prematurely denying /dismissing Plaintiff's Motion to Quash Arrest and Suppress Evidence Motion and having done so while there was a

7

to have said motion transferred to another Judge instanter for proper legal analysis and review of that motion. Fourth, by subjectively denying Plaintiff's legal position in his well-prepared documents / motions almost instanter where when private counsel had filed them the same in a separate case, defendant Wadas rescheduled those matters over 30 days out to allow him some time to read & review those motions.

51.     Here, in Plaintiff's case, the several motions filed before the Court were almost instantaneously denied and when Plaintiff called the Judge out on it, the Defendant threaten to hold him in Direct Contempt of Court.

52.     Rubber stamping Motions in a manner to disregard a Plaintiff's rights to represent themselves *pro se* (i.e. in not listening to them) and to have their legal positions legitimately entertained by the court is direct violation of the type of fundamental fairness that is so required in order for a criminal defendant to be afforded his proper rights under the Due Process Clauses' of our Constitution and the laws of this land, said rights were clearly violated by this defendant in a willful and wanton manner.

53.     In so-far-as the State's Attorney's Office, again, that office took a case where there was absolutely "**NO PROBABLE CAUSE**" to believe that Plaintiff had violated either one of the two sets of charges maliciously set forth against him all in violation of this Plaintiff's **equal protection of rights clause**.

54.     Plaintiff was never placed upon proper notice (through the charging instrument information or otherwise) as to what authorized act officer Cruz was alleged to have been involved/ engaged/ performing during the time of his injury whereby ambushing said Plaintiff (Trial by Ambush) whereby leaving him in question in trying to guess & figure out how he could have attacked such (alleged authorized act) during his trial proceedings.

55.     Such act needed to be spelled out specifically and in detail in order for Plaintiff to obtain the proper due process notice requirements in order for him to properly mount a legal defense, as the charging instrument "DOES NOT" whereby rendering said document void on its face whereby violating this Plaintiff's absolute right to due process under law.

56.     Again, the men and women from the State's Attorney's Office took a case where they didn't have one and prosecuted it out of safeguarding officer interests as the Police Officer's Involved were previously named in a Federal Civil Rights law suit.

57.     The men & women from the Cook County State's Attorney's Office DID NOT prosecute this matter in the best interests of obtaining justice as they are so called required to do.

58.     Prosecuting this matter in the way that they had, clearly violates this Plaintiff's Due Process Rights afforded to him under the United States Constitution and the laws enacted there under.

59.     For this, Plaintiff moves this Court to take such claims seriously and to not even think about applying judicial immunity or any other type of affirmative defense on such grounds as this is one case that needs to be properly addressed before this court given the set of circumstances involved.

8

## COUNT 1

## PLAINTIFF AGAINST DEFENDANT WADAS FOR VIOLATING HIS 14TH AMENDMENT RIGHTS PURSUANT TO THE EQUAL PROTECTION OF RIGHTS CLAUSE

60.     Plaintiff hereby re-incorporates all previous paragraphs as fully set forth herein.

61.     Plaintiff had an expectation of receiving a fair and impartial court proceedings' and he never got that.

62.     A person has an absolute right to represent him/herself *pro se* with the same equal protection of rights that an attorney or any other person would have had through a fair and impartial court proceedings.

63.     Plaintiff did not receive that as those rights were maliciously violated by defendant Wadas on multiple occasions whereby prematurely ruling on plaintiff's motions to dismiss the case (rubber stamping them) without properly analyzing plaintiff's motions (reading them), denying his motion to quash & suppress evidence AFTER A SUBSTITUTION OF JUDGE FOR CAUSE MOTION HAD BEEN PREVIOUSLY FILED (even after being warned by the Chief Presiding Judge that "once a substitution of Judge Motion has been filed, the court loses all jurisdiction in the matter to continue on in the matter until such motion has been properly Ruled upon.

64.     The court through the actions of defendant Wadas proclaimed that plaintiff was trying to gain the system) threaten that is plaintiff did not follow through on his Motion to Quash & Suppress Evidence that he would forfeit his right to any subsequent hearings on the matter whereby denying him proper due process.

65.     Defendant held Plaintiff in the CCDOC for 13 months pending his trial, there really was NO NEED to hold Plaintiff in custody for that amount of time frame except to punish him for exercising his pro se rights and for Not taking a plea deal as a Plea Deal was offered to Plaintiff 6 weeks after he was originally in custody which would have allowed him to be released that night under time considered served, but because this Plaintiff refused and rejected any Plea being taken in the case, this Defendant Judge penalized this Plaintiff by holding him in custody almost an additional 12 months (while his father was dying of cancer) as punishment for Not taking the plea deal and for this plaintiff exercising his constitutional rights to proceed Pro se in this matter.

66.     The conduct undertaken by this defendant Judge was willful, wanton and in a total disregard for this Plaintiff's constitutional rights which shocks the conscience.

67.     Defendant violated Plaintiff's rights (on multiple occasions) while acting under color of state law as the employee, agent and or a representative of the Cook County Judiciary (Circuit Court Judge of Cook County) which clearly violated this Plaintiff's 14th Amendments rights, privileges, and immunities secured to him under the laws enacted under the United States Constitution.

68.     This Defendant's unlawful actions resulted in and continues to result in an undue burden both financially and mentally whereby losing valuable time away from his father during a time on when he was dying as well as not being able to secure positive employment because of this court proceeding (whereby being currently sentenced to 364 days in CCDOC custody as part of a sentence from this stale conviction (which never ever should have went to trial) Plus all of the assets Plaintiff lost while in custody based upon this Defendant's egregious and outrageous conduct from behind the Bench.

69.     By reason of this Defendant's conduct, Plaintiff was deprived of rights, privileges and immunities secured to him under 6th (Sixth) Amendment (see _Faretta v. California_ -1975) as reinforced by the 14th Amendment (fair trial rights to state court proceedings) pursuant to being properly informed of accusations against a person and the right to act as one's own counsel without any retaliatory animus's from a Judge for having done so.

70.     Therefore, Defendant Wadas is liable for violations to this Plaintiff's 6th and 14th Amendment rights secured to him under the United States Constitution pursuant to Sections 1983.

# COUNT II

## PLAINTIFF AGAINST JOHN & JANE DOE STATE'S ATTORNEY'S & THE STATE'S ATTORNEY'S OFFICE ITSELF

71.     Plaintiff hereby re-incorporates all previous paragraphs as fully set forth herein.

Case: 1:26-cv-01270 Document #: 1 Filed: 02/02/26 Page 11 of 41 PageID #:11

72. Plaintiff raises that same violation under the 14th Amendment pursuant to the equal protection of rights clause.

73. Here, the John @ Jane Doe members from the State's Attorney's Office approved Felony charges against

74. Plaintiff all without have the requisite probable cause to believe Plaintiff had violated any laws to the contrary.

75. This is especially true for the one charge of pursuant to 625 ILCS 5/4-104 (a)(3) – a class 2 Felony that Plaintiff had lawful entitlement/possession of said vehicle documentation from day one! Why Plaintiff was even ever charged with an allegation remains unclear, however, said charges (which never should have been brought in the first place) should have been rightfully dismissed years ago instead of waiting to the day of trial to dismiss said charge before the court.

76. Next, the second charge of "RESISTING" a police officer (in so far as the charging instrument goes) doesn't spell out with specification on how this plaintiff was alleged to have resisted the officer in order for him to prepare a proper defense. Previously case law states that such information is vital and crucial in allowing an individual to mount a proper defense to such allegations, here, there aren't any which essentially deprived this plaintiff of a fair and impartial trial proceeding before the court.

77. The men & women from the State's Attorney's Office should have known this and their refusal to provide such information or amend the charging instrument on its face, deprived Plaintiff of his equal protection of rights clause in denying him a fair and impartial trial proceeding before the court.

78. Moreover, the actions by these Defendants which shocked the conscience were willful and wanton and in total disregard towards Plaintiff's constitutional rights under the 14th Amendment and the laws enacted thereunder

79. In committing these acts of misconduct described herein these Defendants committed then under color of law as the employees, agents, and or representatives of the Cook County State's Attorney's Office who deprived this Plaintiff of rights, privileges, and immunities secured to him under the laws enacted under the United States Constitution pursuant to the 14th Amendment.

80. These Defendants unlawful acts resulted in an unwarranted 9-year prosecution against this Plaintiff on felony charges in addition to leading to his incarceration for 13 months whereby losing numerous assets to his accord as well as his freedom but most importantly valuable time with his father before his passing. This has created and still creates an undue burden followed by extreme emotional distress upon said Plaintiff for these defendants' unlawful actions.

11

81. By reason of these defendant officers' conduct, Plaintiff was deprived of rights, privileges and immunities secured to him under the 14th Amendment under the constitution of the United States and the laws enacted thereunder.

82. Therefore, these Defendants are liable for violations to plaintiff's 14th Amendment rights secured to him pursuant to 42 U.S.C. Sections 1983.

# COUNT III

## PLAINTIFF AGAINST DEFENDANT COOK COUNTY GOVERNMENT ITSELF AS A WHOLE FOR INJUNCTIVE RELIEF

83. Plaintiff hereby re-incorporates all previous paragraphs as fully set forth herein.

84. Cook County Government oversees the men & women of the Cook County State's Attorney's Office as well as the County Judiciary.

85. What has happened in Plaintiff's case is and has been a systematic problem with what both the State's Attorney's Office has been doing to people as well as the judiciary of Cook County.

86. The Doctrine of absolute / judicial Immunity was not designed to protect judicial / prosecutorial wrong doing, but that what it has become.

87. The actions from both sides (The Bench & Prosecution) were nothing more than a mere game to have Plaintiff convicted in efforts to snuff out his Federal claims against said Police Officers in this case.

88. Most of Plaintiff's trial rested on the fact that Plaintiff had filed a federal law suit against the Police Officers involved in that situation and less on what the Plaintiff was alleged to have done to warrant such egregious charges and prosecution against him.

89. Moreover, Cook County has no viable way to complain about a Judge or to have any type of an investigation launched against him or her based upon misconduct just because they are a Judge like any other county employee has such as through the Independent Office of the Inspector General's Office. Are we not all created equally under this system? Apparently not!

90. You have a pattern of misconduct by Judge Wadas governing from the Bench essentially setting people up for

convictions, there is no fairness or impartiality going on in his courtroom. County officials either are aware or should be aware of this but his deeds of misconduct still go on today without any repercussions or responsibility of his actions.

91.     Isn't the whole legal system designed to hold individuals responsible for their actions/decisions but we don't hold the ones (Judges & Prosecutors) responsible for their actions/decisions even though said decisions can ruin a person's life and reputation for good? Sounds hypercritical to me but again, if all men are created equal, then why is there such a thing as Judicial/absolute Immunity?

92.     Those Doctrines if you ask this Plaintiff are unconstitutional in nature in that they do nothing more than allow an individuals like Defendant Wadas to get away with what he's been getting a way with for decades. Setting people up for convictions and denying them their due process rights in court.

93.     How this egregious conduct has gone on for so long and government officially turn a blind eye to it is beyond me.

94.     Plaintiff is seeking injunctive relief in this suit to authorize members from the Cook County Inspector Generals' Office to handle complaints against members from both the State's Attorney's Office and from the Cook County judiciary whereby authorizing them to launch investigations and have their findings turned over to the Chief Judges Office as well as making said investigations public to increase transparency from within the Circuit Court of Cook County Court system.

95.     The current legal system is just flat out broken, here in this case, Plaintiff lost 10 Plus Years (if not his entire career) working in a field he loved as a professional educator being a high school automotive education instructor.

96.     The injury he faces could never rightfully be repaired as he lost not only his freedom for 13 months (being released on the day of his father's death) but valuable time remaining with him as well. Money could never turn back the hands of time especially when time is of the utmost importance as it was in this case.

97.     The irreparable harm that was placed upon this Plaintiff in this egregious criminal prosecution of him will forever have a life long lasting affect as (regardless if this criminal conviction will ever be set aside) he's always left with the issue of him having to spend 13 months in CCDOC custody, what school District in this nation would ever considering employing a person who has been in custody for that time frame? Correct No school District.

13

98.    No one should ever have to go through what Plaintiff went through with Judge Wadas and the Cook County Court system where the prosecutors prosecute their matters in regards to protecting law enforcement officers from civil liability & a Judge takes out a retaliator animus against a Defendant for having exercised his/her constitutional right to represent themselves *Pro Se*, as that's what had happened here in this case. It's clear upon it's face and within the official court record.

99.    ITS TIME TO FIX THE SYSTEMATIC PROBLEM WITH THE COOK COUNTY COURT SYSTEM AND THIS LAWSUIT IS A GOOD PLACE TO START SO I PRAY TO THIS COURT TO TAKE THIS MATTER SERIOUSLY SO WE CAN GET THE CIRCUIT COURT OF COOK COUNTY BACK ON TRACK OR BACK ON ITS HORSE THAT IT HAS FALLEN OFF OF LONG AGO!!!.

*Wherefore*, plaintiff Kevin Sroga, respectfully moves this Honorable Court to enter judgment as follows against these defendants and each of them on every claim:

a)  That defendants be required to pay plaintiff, compensatory damages including extreme emotional distress, in a sum to be determined at trial;
b)  Award special damages in a sum to be determined at trial;
c)  Award extreme exemplary and punitive damages, in a sum to be determined at trial;
d)  Require the defendants to pay the plaintiffs costs of the suit herein occurred;
e)  Require and or award any such other and additional relief that this Honorable Court deems proper and just;

**This Plaintiff, Kevin Sroga, Hereby Requests a Trial by Jury on each and every Count of his Complaint.**

Respectfully submitted,

**Kevin Sroga, Plaintiff**

Kevin Sroga
7915 W. Cressett Dr.
Elmwood Park IL 60707
312-536-3864

14

# Former youth jail worker acquitted



Plaintiff's Exhibit A-

FEB 2 PM5:31



**The Chicago Reporter**

UNCATEGORIZED

# Horrific' video of incident at Chicago's juvenile jail raises questions about recent trial, experts say

by **Kelly Garcia, Injustice Watch**
November 20, 2025

*This story was produced by Injustice Watch, a nonprofit newsroom in Chicago that investigates issues of equity and justice in the Cook County court system. Sign up here to get their weekly newsletter.*

Newly released video of **a December 2023 incident inside the Cook County Juvenile Temporary Detention Center** has raised new questions about a judge's decision last month to acquit one of the officers involved, experts and advocates told Injustice Watch.

The minute-and-a-half-long video, which was provided to Injustice Watch by the Cook County State's Attorney's Office in response to a public records request, appears to show former detention center rapid response specialist Kevin Walker flinging a handcuffed 15-year-old boy to the floor by his shirt. Shortly after, the boy can be seen lying motionless on the floor of a holding cell.

The boy was knocked unconscious and sustained visible bruising around his left eye, according to the testimony of a doctor who treated him afterward.

Cook County Circuit Judge Kenneth J. Wadas **found Walker not guilty of aggravated battery and official misconduct** during a 2½-hour bench trial on Oct. 31. In handing down his verdict, Wadas questioned the strength of the evidence presented by prosecutors, including the video.

"The defendant puts his hand on [the boy] and maybe pushes him at best," Wadas said. "There is no picking up and throwing down. I didn't see it that way."

*Plaintiff's Exhibit A*

But experts and advocates who viewed the video at Injustice Watch's request said they saw it very differently than the judge had.

"It is unequivocal that that boy is being pushed from officer to officer and then swung into that cell," said Candice Jones, former director of the Illinois Department of Juvenile Justice, noting that the shadows visible in the video make that sequence of events more clear.

"They swing him with such force that I couldn't tell whether or not he hits the wall going down, because once he gets on the floor he pretty much becomes prone for the rest of the time that you can see him," she added.

The video was "horrific," said Stephanie Kollmann, policy director at the Children and Family Justice Center at Northwestern University's Bluhm Legal Clinic. Kollmann said she was especially troubled by the officers' apparent disregard for the boy after he appeared motionless.

"He could have died," she said.

During the trial, Wadas noted the boy had not been compliant, either in the moments leading up to the incident or during the investigation that followed.

But Jones said she doesn't believe there was any threat to the officers present, noting that one of them appears to be smiling as he approaches the holding cell.

"I find it hard to believe someone found that there was an imminent threat of safety such that it justified a use of force," she said. "He's handcuffed. He's relatively physically small. And none of these staff people look threatened."

According to incident reports previously obtained by Injustice Watch, the boy was handcuffed and escorted to a holding cell by Walker and Michael Collins, another of the facility's rapid response specialists known as "rovers," for refusing to get out of bed and yelling obscenities at and threatening other employees.

The video does not have audio. But at Walker's trial, Collins testified that once they approached the holding cell, another employee, Nsisong Ekanem, made a comment suggesting the boy looked like a police officer. The boy became agitated and threatened Ekanem while attempting to run out of the room, Collins said. Walker then attempted to restrain the boy, and together they pushed him into the cell, causing him to fall facedown on the floor, Collins testified.

During the trial, Assistant State's Attorneys Kathryn Sodetz and Jonathan Ross also presented footage from Collins' body-worn camera. In that video, which included audio, the boy can be seen lying facedown with his legs hanging off the holding cell bed. Collins testified that the boy appeared to be breathing heavily. He remained unresponsive even as Walker and Collins repeatedly asked him to place his hands on his head.

The state's attorney's office denied Injustice Watch's request for that footage, saying it did not have the technological capability to alter or redact identifying information from the video, including people's faces. Injustice Watch is continuing to pursue release of that video.

Injustice Watch has sought records related to this case, including the videos, since April. In June, Wadas signed an order blocking the City of Chicago from releasing any materials while the case was pending in court.

In an emailed statement, Juvenile Temporary Detention Center General Counsel Zenaida Alonzo said an internal investigation found Walker violated detention center policy and was fired.

Detention center investigator Michael Bernardini, who reviewed the case internally and testified at the trial, said Walker's actions were not consistent with the facility's use-of-force policy, which says force must be "justifiable and reasonable and only be used as a last resort."

"From what I saw on the videotape and the condition of [the boy], I didn't know what caused his condition, but it was definitely something that was out of the ordinary," Bernardini testified.

Kollmann said she hopes the video brings attention to conditions inside the detention center, which is one of the largest juvenile jails in the country and has been plagued in recent years by allegations of sexual and physical abuse, including the use of excessive restraint.

"It's difficult to look at the video and not see callous disregard for the health and safety of the youth at the detention center," she said. "I hope that it inspires people to take a hard look at what's happening there and call for change."

---

This article first appeared on Injustice Watch and is republished here under a Creative Commons Attribution-NoDerivatives 4.0 International License. IW

# facebook

Log In

## Injustice Watch's Post                                        ✕

 **Injustice Watch**
November 7, 2025 · 🌐

In delivering his verdict, which lasted only a few minutes, Cook County Circuit Judge Kenneth J. Wadas said the state had not met its burden of proof. "I don't even think it's close," he said.



INJUSTICEWATCH.ORG

**Rare trial of Chicago juvenile jail guard ends in acquittal**
A Cook County judge found Kevin Walker not guilty of aggravated battery and official misconduc...

👍😮 2

 Like                     Comment

*Plaintiff's Exhibit A-1*

On Friday, a judge found Kevin Walker, a former employee of the Cook County Juvenile Temporary Detention Center, not guilty of aggravated battery and official misconduct.

The criminal charges related to a 2023 incident in which Walker allegedly threw a handcuffed 15-year-old boy to the ground. The boy was left unconscious and with visible bruising on his face, according to testimony at trial.

In delivering his verdict, Cook County Circuit Judge Kenneth J. Wadas questioned the strength of the evidence presented by prosecutors, including surveillance video footage of the incident and body-worn camera footage from another employee.

Experts say the verdict could have a chilling effect on allegations of abuse at the detention center, which they say already lacks meaningful oversight and transparency. Read the full trial recap by reporter Kelly Garcia.

# More reporting



## Inside a rare trial

What's at stake in the trial of a former youth jail employee?

**Keep reading →**



## History of reversals

**Injustice Watch**

 

**2020 RETENTION**

# Appeals court reverses this judge more than any other in criminal courts seeking retention

Kenneth J. Wadas has been reversed 25 times in 6 years — more than any other Cook County criminal court judge on the November ballot running to remain in office.

Plaintiff's Exhibit B

 by John Seasly    October 11, 2020



Circuit Court of Cook County Judge Kenneth Wadas Sun-Times File

*This story was co-published in the __Chicago Sun-Times.__*

In 2004, when Cook County Circuit Judge Kenneth J. Wadas sentenced Benard McKinley to 100 years in prison for a murder committed at age 16, McKinley knew what it meant.

I felt as if Wadas had sentenced me to die in prison," McKinley, now 33, says from Stateville Correctional Center. "I felt like my life was over."

A federal appellate court reversed McKinley's sentence in 2016, finding that Wadas had failed to take McKinley's age into consideration when sentencing him to a century behind bars with no possibility of early release.

"He said nothing to indicate that he thought the defendant's youth at all relevant to the sentence," Judge Richard Posner wrote for the majority in the 7th U.S. Circuit Court of Appeals' 2-1 decision. Posner said the 100-year sentence was a "de facto life sentence," which required Wadas, under a prior U.S. Supreme Court ruling, to consider that "children are different."

It's rare for a federal court to overturn a criminal sentence imposed by a state court judge.

But, in the past six years, Wadas has been reversed 25 times by the Illinois Appellate Court, nearly twice as often as the combined total of the other five criminal judges running for retention this year, an Injustice Watch investigation found.

Appeals courts found that Wadas frequently disregarded a law that prevents excessive sentencing and incorrectly dismissed prisoners' claims of errors during their trials.

Wadas declined to comment.



Circuit Court of Cook County Judge Kenneth Wadas
Sun-Times File

"That's just an astounding number," says Northwestern University law professor Susan Provenzano, an expert on appellate advocacy. "There are systemic problems with either his legal analysis or his ability to assess facts or make decisions."

As an assistant state's attorney in the 1980s, Wadas was rebuked by the Illinois Appellate Court, which found he engaged in tactics it called "an insult to the court and to the dignity of the trial bar."

He was involved in multiple cases in which prosecutorial misconduct led to appellate reversals, records show. And the appellate court specifically suggested he should be brought before the board that hears cases of attorney misconduct. But Wadas never faced discipline for his actions, was promoted by then-State's

Attorney Richard M. Daley and, when he later ran for judge, found by the bar associations that rate judicial candidates to be qualified for the bench.

Since Wadas last won retention in 2014, the appeals court has reversed him for issuing excessive sentences, often involving a violation of Illinois's "one act, one crime" doctrine. That rule prohibits multiple convictions "that are based upon precisely the same single physical act" and requires that lesser convictions for the same act be tossed out.

### READ MORE



**November 2020 judicial retention election guide**

Injustice Watch's guide to the 2020 Cook County judicial general and retention elections.

Wadas has been reversed based on a violation of the "one act, one crime" rule 10 times in the past six years, Injustice Watch found.

Gregory Reed was found guilty of 14 separate charges for firing several shots at a group outside a Chicago nightclub in 2011, wounding one person. Wadas sentenced him to 15 to 50 years for each charge.

Reed appealed. An appellate panel found that Wadas violated the "one act, one crime" rule, <u>**ordered all but four of Reed's convictions vacated**</u> and called for a hearing about his attorney's effectiveness.

Criminal defense and civil rights attorney Jennifer Bonjean says the rule Wadas was found to have ignored isn't hard to understand.

"If you're constantly getting reversed on that, either you're a dummy, or you just don't care," Bonjean says.

Tossing out a lesser conviction for the same crime might not dramatically change a prisoner's situation. Reed, for example, is still serving a 50-year sentence on the remaining charge. Sentences for separate charges often run concurrently. But if the error is left uncorrected, it leaves multiple felonies on a convicted person's record when there should only be one, and that can take years to correct on appeal, Bonjean says.

In 2014, Jerome Weathers sought to challenge his murder conviction, arguing that two detectives, James O'Brien and John Halloran, had violently coerced his confession. Wadas dismissed Weathers' request,

ruling that it did not pass a legal test for whether his case should proceed.

The following year, an appellate panel reversed Wadas' decision in that case. It was one of four times since 2014 that a higher court has found Wadas improperly dismissed a postconviction petition.

The appeals court ruled that new evidence from a 2012 Torture Inquiry and Relief Commission report detailing 76 allegations against the detectives, who had worked under disgraced former Cmdr. Jon Burge, merited giving Weathers a new hearing.

Weathers' petition "clearly alleged that his confession was physically coerced by Detectives O'Brien and Halloran and that newly discovered evidence corroborated his claims," Appellate Justice Margaret McBride wrote.

**READ MORE**



**4 judges, 6 years, 98 reversals — and they want you to vote to keep them in office**

Cook County judges Margaret Ann Brennan, Patrick J. Sherlock, Kenneth J. Wadas and Anna Helen Demacopoulos have had rulings reversed on appeal more than 3 times as often as their colleagues.

In 2013, Martell Boswell pleaded guilty to aggravated vehicular hijacking and agreed to a 22-year sentence, which Wadas told him was the minimum mandatory sentence. The judge was wrong: The minimum was 21 years.

When Boswell sought a resentencing, Wadas denied it. **An appellate panel reversed him**, finding that Boswell had met "the very low standard necessary to survive first-stage dismissal."

In 1989, Anthony Mitros pled guilty to murder and burglary charges and was sentenced to life in prison. When he pointed out in a 2011 postconviction petition that such a harsh sentence wasn't allowed under sentencing guidelines, Wadas dismissed his motion.

The appellate court disagreed, ordering Wadas to issue a new sentence — within the appropriate guidelines of 20 to 60 years.

READ MORE



### After courts order new sentence, Cook County prisoner given 39 years for murder committed as youth

An Illinois man originally sentenced to serve 100 years in prison for a murder he committed at age 16 was re-sentenced Monday to 39 years by Cook County Circuit Court Judge Kenneth J. Wadas.

A court lacks the authority to impose a sentence that does not conform with statutory guidelines," Justice Nathaniel Howse said in the court's opinion.

When Benard McKinley's case came back before Wadas for resentencing in 2019, McKinley says he thought Wadas wasn't happy about being reversed.

"He made sure we all knew it was a 2-1 decision that sent me back in front of him," McKinley says.

By that time, a new Illinois Supreme Court decision had set a standard that anything more than 40 years for a juvenile was the equivalent of a life sentence.

Even though McKinley was a juvenile at the time of the killing, Wadas said during resentencing, "The gun made him older."

And he resentenced McKinley to 39 years in prison — less than the 40 years and a day that the Supreme Court said would amount to a life term.

*Olivia Louthen and Annabelle Rice contributed reporting.*

© 2026 Injustice Watch

Powered by Newspack

Public

Everyone deserves trustworthy local reporting. You help make that happen.

Log In

☰Q **CS★T**

Donate  ⓘ

THE WATCHDOGS    NEWS    CHICAGO

# 4 judges, 6 years, 98 reversals — and they want you to vote to keep them in office

Cook County judges Margaret Ann Brennan, Patrick J. Sherlock, Kenneth J. Wadas and Anna Helen Demacopoulos have had rulings reversed on appeal more than 3 times as often as their colleagues.
By  John Seasly | Injustice Watch   |   Oct 10, 2020, 6:00am CST



Plaintiff Exhibit C

✕

ndly hurtful': GOP office in Arlington Heights vand  Read More



The Leighton Criminal Courthouse at 26th and California. | Sun-Times file

**Register and get unlimited access to the Sun-Times.**

Plus, get the Morning Edition newsletter every weekday morning!

Register now

 SHARE     COPY LINK

✕

ɹndly hurtful': GOP office in Arlington Heights vand Read More

Four Cook County judges who are on the Nove

have had their rulings reversed on appeal 98 tir

— more than three times as often as their colle;

has found.

Margaret Ann Brennan, Patrick J. Sherlock, Kenneth J. Wadas and Anna Helen Demacopoulos are the only judges seeking retention to each have more than a dozen decisions reversed by higher courts in the six years since they were last retained.

The average number of reversals for the 56 Cook County circuit judges running for retention was four.

A reversal means an appeals court decided a judge was wrong and overturned all or part of a ruling.

"When a judge has a higher reversal rate than normal, it raises a red flag," says attorney David Melton, former head of the Chicago Council of Lawyers' judicial evaluation committee.

Only a small fraction of cases get appealed. About one in 10 of those is reversed, according to 2018 Illinois Supreme Court data.

A spokeswoman for the judges disputed some of the reversal numbers and says no conclusions about their ability should be drawn from them.

"Divisions such as domestic relations, traffic, probate, county and misdemeanor are rarely, if ever, appealed," spokeswoman Hanah Jubeh says. "Comparing judges' reversals is unfair, challenges the independence of the judiciary and only further discourages judges from taking on difficult assignments in fear of reprisal."

Injustice Watch reviewed the reversals of every judge running for retention in Cook County to find that these judges improperly app"         ×
colleagues, in the views of higher courts.         ndly hurtful': GOP office in Arlington Heights vand Read More

Brennan, a circuit judge since 2002, serves in tl
suits with damages of at least $30,000 being sc
since 2014, records show — far more often thai
retention.

Nine of her reversals involved errors in issuing summary judgments — a ruling a judge makes for one party in a civil lawsuit, finding the evidence is so clear that the case doesn't even warrant a full trial. They're supposed to help judges ensure that only cases with valid claims go to trial.

In one case Brennan heard, the son of a man who died while held at the Cook County Jail sued the lawyers who filed a wrongful-death case against the county, saying they wrongly distributed the $450,000 settlement to his half-brothers and not to him.

Brennan awarded summary judgment to the law firm, ruling that the plaintiff failed to prove he was the dead man's biological son.

He appealed, and appellate Judge Maureen Connors reversed the decision, citing "the drastic nature of a summary judgment order" and saying Brennan should have allowed the case to go to trial, where paternity evidence could have been presented.

In another, higher-profile case, Brennan reversed a decision in which an administrative law judge had found the Chicago Bears owed Cook County $4.1 million for amusement taxes the team had failed to pay. Brennan's decision in that case was itself reversed in 2014. The appellate panel agreed with the original finding that the amusement tax applied to the entire ticket price and not just to part of it.

X

ındly hurtful': GOP office in Arlington Heights vand Read More



Cook County Judge Patrick J. Sherlock. | Provided ⏐ ⏐ndly hurtful': GOP office in Arlington Heights vand Read More

Sherlock, a judge since 2007 who serves in the
times since 2014. The Illinois Appellate Court ol
misapplied statutes, reversed his judgments, va
proceedings it found he'd wrongly ended.

In one case, after a jury awarded $45,000 to a child injured by a police officer driving to an emergency, the defendants asked Sherlock to overrule the jury's verdict. He denied the motion, and the appeals court overturned his decision.

"There is simply no evidence other than Officer Kowalski's speed to support [the child's] claim, and we simply cannot find that his speed alone may sustain a claim of willful and wanton conduct," Appellate Justice Thomas E. Hoffman wrote in reversing him.

Wadas repeatedly was reversed for disregarding a basic tenet of Illinois criminal law, leading defendants to be saddled with additional convictions and, in some cases, to receive longer sentences.

---

RELATED

**Appeals court reverses this judge more than any other in criminal courts seeking retention**

**Criminal cases drag on for years as some Cook County judges OK repeated delays**

**Push to unseat Judge Michael Toomin is nothing but an unsupported hit led by Toni Preckwinkle's Cook County Dems**

---

✕

ındly hurtful': GOP office in Arlington Heights vand Read More

# The Committee to Expose Dishonest and Incompetent Judges, Attorneys and Public Officials

Disclaimer

## Main Menu

Home

Attorney Misfits by State

Ethical Judges/Attys

Attorney Perverts

Federal Misfits

Foreign Attorney Misfits

Foreign Judicial Misfits

Judicial Perverts

Judicial Misfits by State

Public Official Misfits by State

The Committee

About

▶ Judge Kenneth Wadas of Chicago; Serial Dimwit

User Rating:○○○○○ / 0

Poor ○ ○ ○ ○ ◉ Best Rate

### Judge Kenneth Wadas of Chicago; Serial Dimwit

The state of Illinois presented Kenneth J. Wadas with a law license in 1975 after he graduated from the University of Illinois-Chicago John Marshall Law School.



*Plaintiff's Exhibit D*

According to a recent (ca. October 2020) article in the Chicago Sun-Times, Kenny has proven that he is Cook County's Premier Judicial Dimwit. The reporting by **John Seasly of Injustice Watch** establishes the following facts regarding Judge Wadas' gross incompetence.

- **Has been reversed by the Illinois Supreme Court twenty-five (25) times over the past six (6) years**
- **Kenny's record of appellate reversals is twice as much as the combined total of the other five criminal judges running for retention in 2020**
- **Appeals ruled that Kenny frequently thumbs his nose at laws preventing excessive sentencing**
- **Kenny erroneously dismissed prisoners' claims of errors during their trials**
- **Ignorantly sentenced 16-year-old to 100 years in murder case which federal court overruled because Kenny failed to take the defendant's age into consideration as required by the U.S. Supreme Court**

## Who's Online

We have 230 guests online

## Secondary Menu

Award Winners

Dawg Opinions

Dawg Laments

Dawg in the News

US Map - Attorney

## Donation Request

Your donations are needed to help defray the recurring costs for internet services, cable access, research via LexisNexis, media subscriptions, and the employment of a researcher and editor.

Contact Us

Disclaimer

Search

search...

Donate Here

Prior to ascending to the bench, Kenny was employed as an assistant state's attorney. In that position he was involved in numerous criminal matters wherein prosecutorial misconduct let to reversals by the Court of Appeal. In fact, in once instance the Illinois Appellate Court called Kenny's tactics "an insult to the court and to the dignity of the trial bar."

Of course, Kenney does not care how many times he is reversed by a higher court. He well knows that no Illinois judge has ever been removed from office for being grossly incompetent. In addition, he could care less on how much it costs Illinois taxpayers to correct his incompetent rulings since his wages are not reduced to cover the cost of her repeated reversals.

**FYI:**As an assistant state's attorney in the 1980s, Injustice Watch found, he was involved in multiple cases in which prosecutorial misconduct led to appellate reversals. The Illinois Appellate Court called his tactics "an insult to the court and to the dignity of the trial bar."

And lastly, one would hope that the voters in Cook County have had enough of Kenny's incompetence and shenanigans and send him packing.

As we speak (ca. October 2020), Kenny continues to sit as a Cook County judge in Chicago, Illinois.

Valid XHTML and CSS.

Каталог сортов растений



**Bluhm Legal Clinic**
**Center on Wrongful Convictions**

# Robert Wilson





Robert Wilson (Photo: Jennifer Linzer)

## Father of three spends a decade in prison for a crime he did not commit

Following a jury trial before Cook County Circuit Court Judge Kenneth J. Wadas, Robert Wilson was convicted of the attempted murder of June Siler, a 24-year-old white woman, at a bus stop near 29th Street and King Drive the evening of February 28, 1997. For no apparent reason, the man stabbed Siler in the face and neck with a box cutter. She described the man as a black male in his twenties with a mustache and a medium complexion who stood about five feet seven inches and wore black Velcro shoes.

Wilson was arrested the next day at the bus stop where the attack occurred. Although he was 41 years old — almost double the age Siler had estimated — Wilson otherwise fit the general description Siler had provided. At the police station, Wilson was photographed and, from an array of five photographs, Siler identified him. Despite a search of his home, however, police found no black Velcro shoes and no other physical evidence linking him to the crime.

After some 28 hours of intermittent interrogation, Wilson signed a written confession prepared by Assistant Cook County State 's Attorney William J. Healy. According to the confession, Wilson was smoking a cigar when he encountered Siler at the bus stop. "Those things cause cancer," she told him — a seemingly innocuous remark that somehow offended him, provoking the attack. Based on the confession and Siler's identification, Wilson was charged with the crime.

In the two weeks following Wilson's arrest, within a mile-and-a-half radius of the bus stop where the attack occurred, there were five slashing attacks on white victims by a black man matching the description of the man who attacked Siler. The last of the attacks occurred on March 15, when the slasher was caught by police fleeing the scene. He was identified as Jerryco Wagner, a 21-year-old African American who stood five feet seven inches and — unlike Wilson — was wearing black Velcro shoes. Under questioning, Wagner confessed to the five attacks, saying that God had ordered him to attack the victims because they were white.

It wou
or at l
with a
prose
opera
that tl
Some Northwestern websites use cookies and similar technologies to understand visitor experiences. Learn more in our Privacy Statement and Cookie Information Page.

Siler attack, but they apparently did not —
nfinement, he stabbed a fellow prisoner
ental institution. Before Wilson's trial,
t was irrelevant, despite the similar modus
/adas, himself a former prosecutor, agreed
)out Wagner.

At Wi
Wilso
of the
about
wronc
Adjust or Reject Cookies
Accept All
on, testified that it had been voluntary.
ieatings by Detective James O'Brien, one
igh blood pressure. Wilson said the story
J to testify in rebuttal, and both denied any
ars in prison.

The Illinois Appellate Court affirmed the conviction with an unpublished opinion on March 21, 2002. After the Illinois Supreme Court denied leave to appeal, Wilson filed a pro se petition for post-conviction relief before Wadas, who

dismissed it without a hearing. On June 16, 2005, the Appellate Court affirmed Wadas's denial of the petition, and the Supreme Court denied leave to appeal the following September 29.

Center on Wrongful Convictions staff attorneys Jane Raley and Karen Daniel, assisted by law students Luis Pinedo and Negar Tekeei, filed a petition for a federal writ of habeas corpus on Wilson's behalf on January 13, 2006. The petition argued principally that Wadas erred in refusing to admit the evidence concerning Wagner. In response, the prosecution argued that the evidence of Wilson's guilt was "overwhelming" and, therefore, even if the exclusion was improper the error was harmless because it would not have affected the jury verdict.

In a 42-page opinion granting the writ, Judge Ruben Castillo held on October 20, 2006, that "the error cannot be considered harmless," and ordered Wilson 's release within 90 days unless the State's Attorney's Office initiates proceedings to retry him.

When Siler learned of the federal court's decision and the information about Wagner, which had been withheld from her before trial, she immediately recanted her identification of Wilson. Illinois Attorney General Lisa Madigan elected not to appeal Castillo's decision, and the Cook County State's Attorney dropped all charges. On December 4, Presiding Cook County Criminal Court Judge Paul Biebel Jr. vacated the conviction, and Wilson was released later in the day from the Logan Correctional Center. "I feel blessed; it's one of the happiest days of my life. I'm free from the penitentiary. I can't ask for anything better," Wilson, 51, said after his release.

Attorneys Raley and Daniel, assisted by law student Brian McLain, next filed a clemency petition on Wilson's behalf. On October 30, 2008, Governor Rod Blagojevich granted Wilson a pardon based on innocence.

---

Judge Castillo's Opinion (pdf)

*Chicago Tribune* article about June Siler's recantation

*Chicago Tribune* article about Wilson's Release

Some Northwestern websites use cookies and similar technologies to understand visitor experiences. Learn more in our Privacy Statement and Cookie Information Page.

Public

Everyone deserves trustworthy local reporting. You help make that happen.

Log In

≡Q **CS★T**

| Donate | ⓘ

EDITORIALS    NEWS    POLITICS

# Before voting to retain Judge Kenneth J. Wadas, consider his troubling record

Decisions by Wadas have been reversed 25 times by the Illinois Appellate Court in the past six years, nearly twice as often as the combined total of the other five criminal judges running for retention.

By  CST Editorial Board  |    Oct 12, 2020, 5:26pm CST

*Plaintiff's Exhibit F*



Cook County Circuit Judge Kenneth J. Wadas | Sun-Times Media

 SHARE      COPY LINK

Early voting is good for democracy. The more time people have to vote, the more they can and will.

But there are downsides. Most obviously, things can change. Between the first day of early voting and Election Day, new information can crop up that might lead voters to reconsider their choices.

With that in mind, for the benefit of those who have yet to vote in Cook County, we'd like to call attention to the troubling record of one circuit judge on the November ballot, Kenneth J. Wadas, as first reported Sunday in the Sun-Times.

## Editorials

Judges up for retention, such as Wadas, almost always get retained, given that they need the approval of only 60% of those who cast ballots for or against them. But that's no reason not to size them up.

As reported in the Sun-Times by John Seasly of Injustice Watch, judicial decisions by Wadas have been reversed 25 times by the Illinois Appellate Court in the past six years, nearly twice as often as the combined total of the other five criminal judges running for retention this year. Appeals courts found that Wadas frequently disregards a law that prevents excessive sentencing and incorrectly dismissed prisoners' claims of errors during their trials.

A typical bad decision by Wadas was his sentencing to 100 years in prison, effectively a life sentence, of a young man who had committed murder at age 16. A federal appellate court ruled that Wadas had failed to take the offender's age into consideration, which is required by a U.S. Supreme Court ruling that "children are different."

Wadas' response to the appellate court's reversal was to grouse about it and re-sentence the offender to 39 years in prison — just a year short of the toughest sentence allowed. "The gun made him older," Wadas said of the offender.

There's a good argument Wadas, though approved for retention by all the major local bar associations, never should have been elected to the bench in the first place in 1996.

As an assistant state's attorney in the 1980s, Injustice Watch found, he was involved in multiple cases in which prosecutorial misconduct led to appellate reversals. The Illinois Appellate Court called his tactics "an insult to the court and to the dignity of the trial bar."

We urge you to read the entire Injustice Watch report about Wadas and three other judges on the ballot — Margaret Ann Brennan, Patrick J. Sherlock and Anna Helen Demacopoulos — whose rulings have been reversed on appeal more than three times as often as their colleagues.

And vote accordingly.

*Send letters to [letters@suntimes.com](mailto:letters@suntimes.com).*

 SHARE   COPY LINK

Judge Kenneth Wadas has been reversed more than most county judges.

**Keep reading →**



# Exploited elders

A system meant to protect older adults is failing.

**Keep reading →**

See more

# Court news roundup

Chicago should pause evictions as ICE raids continue, housing advocates say (Block Club Chicago)

Federal judge issues temporary restraining order governing conditions at Broadview ICE facility (Chicago Sun-Times)

Chicago Police Department to slow hiring next summer to cut costs, superintendent says (Chicago Sun-Times)

The State's Attorney of Cook County now appears before the Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that on or about July 23, 2015 at and within the County of Cook

Kevin Sroga

*RESISTING A PEACE OFFICER CAUSING*

committed the offense of ~~UNLAWFUL POSSESION OF ALTERED, FORGED, OR~~ *INJUR* ~~COUNTERFEITED TITLES AND REGISTRATION~~

in that HE KNOWINGLY RESISTED THE PERFORMANCE OF OFFICER M. CRUZ, *16659, ONE KNOWN TO DEFENDANT TO BE A PEACE OFFICER, OF ANY AUTHORIZED ACT WITHIN HIS OFFICIAL CAPACITY AND WAS THE PROXIMATE CAUSE OF AN INJURY TO SAID PEACE OFFICER,

IN VIOLATION OF CHAPTER 720 ACT 5 SECTION 31-1(A-7) OF THE ILLINOIS COMPILED STATUTES 1992 AS AMENDED AND

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

COUNT NUMBER 2
CASE NUMBER 15CR-12710
CHARGE ID CODE: 0014799

*Plaintiff Exhibit G*

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

A-9